# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**CHARLES L. MIDDLETON**                                                       **PLAINTIFF**

v.                                      **NO. 4:18-CV-480-JM-BD**

**NANCY A. BERRYHILL, Acting Commissioner,**
**Social Security Administration**                                         **DEFENDANT**

## <u>RECOMMENDED DISPOSITION</u>

This Recommended Disposition (Recommendation) has been sent to Judge James M. Moody Jr. Any party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive any right to appeal questions of fact.

**I.**     **Background**

Charles Middleton applied for social security disability benefits with an amended alleged onset date of January 9, 2016. (R. at 91). After a hearing, the administrative law judge (ALJ) denied his application. (R. at 22). Subsequently, the Appeals Council denied his request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Mr. Middleton has requested judicial review.

## II. The Commissioner's Decision

The ALJ found that Mr. Middleton had the following severe impairments: history of cervical spinal fusion, lumbar degenerative disk disease, mild osteoarthritis of the left shoulder, and obesity. (R. at 14). After finding that Mr. Middleton's impairments did not meet or equal a listed impairment, the ALJ determined that Mr. Middleton had the residual functional capacity (RFC) to perform light work, except that he could not perform overhead reaching or constant stooping. (R. at 16). This RFC precluded Mr. Middleton from performing his past relevant work. (R. at 20).

The ALJ took testimony from a vocational expert (VE), who testified that a person with Mr. Middleton's age, education, work experience, and RFC could perform jobs such as cashier II or sales attendant. (R. 21). Based on this testimony, the ALJ held that Mr. Middleton was not disabled. (R. at 21–22).

## III. Discussion

Mr. Middleton argues that the RFC determined by the ALJ is not supported by substantial evidence in the record as a whole; that the ALJ failed to identify functional limitations arising from his obesity; that the ALJ failed to perform a function-by-function analysis; that the ALJ failed to properly resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles*; and that the ALJ failed to provide good reason for finding that allegations of pain were inconsistent with the medical evidence. As set out below, the ALJ's determination of Mr. Middleton's RFC is not supported by substantial evidence upon consideration of the record as a whole.

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

The ALJ gave some weight to every medical opinion in the record. Consultative examiner Garry Stewart, M.D. found no physical limitations. (R. at 557–63). Nichole Clark, A.P.R.N., a treating source, stated that Mr. Middleton should not work more than twenty-five hours per week and that conservative treatment had failed. (R. at 564). She later opined that Mr. Middleton could only sit three hours in an eight-hour day and stand two hours in an eight-hour day. Ms. Clark also opined that Mr. Middleton would be limited to lifting or carrying ten pounds; could never squat; and could only occasionally bend, crawl, crouch, climb, stoop, or kneel. (R. at 579–81).

The ALJ stated that Nurse Clark had opined that Mr. Middleton could "work around a light exertional level," but her exact phrasing was "light duty," and that statement was in the same opinion in which she indicated that he could sit for only three hours and stand for only two hours in an eight-hour day and could lift no more than ten pounds. (R. at 581). It is clear from this context that she was not using the word "light" to refer to a light exertional level as defined by the Social Security Administration. J.

Michael Calhoun, M.D., a treating physician, indicated that Mr. Middleton could and sit for four hours and stand or walk for four hours in an eight-hour workday; lift or carry up to twenty-five pounds; and could never bend, squat, crawl, crouch, climb, stoop, or kneel. (R. at 590–92). The non-examining State Agency consultants opined that Mr. Middleton could lift or carry up to twenty pounds; stand and/or walk for six hours in an eight-hour day; sit for six hours in and eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, or crawl. (R. at 124–25, 139–40). The State Agency consultants also opined that Mr. Middleton should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (R. at 126, 140).

There are several problems with the ALJ's RFC determination. As Mr. Middleton notes, he has a medically determinable impairment of chronic obstructive pulmonary disease (COPD). (R. at 434). The ALJ found that Mr. Middleton's COPD was a non-severe impairment. (R. at 14). The ALJ is required to consider what a claimant is capable of in consideration of all impairments, both severe and non-severe. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). Mr. Middleton argues that the ALJ failed to include limitations occasioned by his COPD.

The Commissioner cites the ALJ's statement that he took all of Mr. Middleton's symptoms into consideration and relies on the presumption of regularity to argue that the ALJ considered all of Mr. Middleton's impairments. *Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010). The Commissioner does not identify any limitations, however, that account for Mr. Middleton's COPD. Furthermore, even the non-examining State Agency consultants opined that Mr. Middleton should have limitations related to pulmonary

irritants. (R. at 126, 140). Because the ALJ did not account for Mr. Middleton's COPD, a condition that would require at least some restrictions on pulmonary irritants, there is insufficient evidence to support the RFC finding.

Additionally, while the ALJ ostensibly gave some weight to every medical opinion, the RFC the ALJ assigned exceeds the limitations found by every physician except Dr. Stewart, who found no limitations at all. Dr. Stewart's opinion is clearly an outlier and is at odds with the evidence. (R. at 132, 139–40).

Also, the State Agency consultants limited Mr. Middleton to occasional stooping, whereas the ALJ merely limited him to less than constant stooping. In fact, the State Agency consultant, on reconsideration, found far more limitations than the ALJ, even after considering the opinion of Dr. Stewart. (R. at 132, 139–40). Of the five medical opinions the ALJ considered, four noted significantly more limitations than the ALJ included in the RFC; and at least one of the four considered the opinion that had fewer limitations. This is not a case where an ALJ finds a middle ground between conflicting opinions that vary in the degree of limitation. Rather, the ALJ found fewer limitations than even the narrowest of the four opinions that have any evidentiary support. In sum, the RFC lacks the support of credible medical evidence and excludes medically determinable impairments that required additional limitations.

The ALJ also erroneously found that Mr. Middleton's activities of daily living supported the ability to perform light work. (R. at 17–18). The ALJ noted that Mr. Middleton counts cattle for his son and makes sure they have water. (R. at 18). This activity consists of driving "right across the road" and "sit[ting] there with the window

down and count[ing] them" and "turn[ing] the water hydrant on." (R. at 105). This is certainly not a description of labor that would indicate an ability to work for eight hours per day.

The ALJ also cited to Mr. Middleton's statements that he could tend to his personal care, feed his dogs, and perform some household chores such as laundry, small amounts of mowing, loading the dishwasher, and washing counters as proof that he could perform light work. (R. at 17–18, 322–23). Notably, Mr. Middleton also stated that he performed such chores for an hour or less. (R. at 323). He also explained that his children clean and mow for him so that he has little work to do and only does "light, little things," even though he "would like to do a lot more." (R. at 107). None of these activities indicates that Mr. Middleton could "perform the requisite physical acts [of light work] day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) (quoting *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982)). Mr. Middleton cites to a Seventh Circuit case that explains the underlying problem with relying on such activities:

> We have remarked the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment. The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (... [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013) (internal quotations omitted). None of the activities relied on by the ALJ indicate that Mr. Middleton could engage in light work.

The Commissioner also argues that Mr. Middleton's part-time job indicates he could perform light work. Mr. Middleton described his duties as putting liners in trash cans, carrying rolls of labels to different rooms, rolling conveyor belts, and labeling boxes. (R. at 106). He indicated that he took breaks during this work, which he performed for one-to-four hours, depending on available tasks and how he felt. Even when considered with Mr. Middleton's daily activities, these minimal duties performed for limited duration fall short of supporting a conclusion that he could perform light work. Overall, the ALJ equated Mr. Middleton's efforts to be somewhat productive and self-sufficient with the ability to work a full eight-hour shift at the light exertional level, and this was error.

## IV. Conclusion

The RFC is not supported by substantial evidence on the record as a whole. For this reason, the undersigned magistrate judge recommends REVERSING and REMANDING the decision of the Commissioner with instructions to develop the record as necessary and to fully and properly consider all the evidence of record and to formulate an RFC consistent with the evidence.

Dated this 25th day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE